Third case this morning, Melecio Flores v. United States Third case this morning, Melecio Flores v. United States Good morning, your honors. May it please the court, Sparkle Sukhnanan for petitioner Melecio Flores. Your honors, Mr. Flores is an immigrant with a sixth grade education who speaks no English and had no criminal record prior to this case. He has alleged that he signed the plea agreement at issue because his attorney told him to do so, whether he wanted to or not. He signed that agreement on the very same day the district court denied his request for new counsel when he tried to fire that attorney. The plea hearing in this case was held on the very next business day. Mr. Flores has alleged that he answered questions at that plea hearing as he was told to do so by his attorney. The transcript of the hearing shows Mr. Flores voicing a number of factual objections to what was happening, and his attorney repeatedly interjecting to assure the court that his client wanted to plead guilty. Most troubling, it was the attorney himself who had to elicit a factual basis for the plea when the court was unable to do so. Mr. Flores was facing what guideline range? Your honor, he was sentenced... 324 to 405 months? Yes, he was sentenced well below the guidelines range. I'm sorry? He was sentenced below the guidelines range. And this attorney, whose conduct you're attacking, had managed to negotiate a plea agreement that guaranteed a below guideline range without cooperation, correct? Yes, your honor. And an attorney in that situation, whose client is disputing minor details of the government's account, knows that there's a serious risk of, in essence, kicking the ball out of the net, right? Of losing the deal and the benefits that he would receive under it, correct? Yes, your honor. Okay. One of the things that troubles me here about your theory is the failure of Mr. Flores after Mr. Edgar stopped representing him, but before he was sentenced in the district court, to seek to withdraw the guilty plea. In fact, at that point, the court hadn't even accepted it, yet there was no effort to back away then. Your honor, it's unclear to me what transpired between Mr. Flores and his new attorney, Mr. Britton, at that point. Once we were appointed by this court to address the voluntariness of Mr. Flores' plea, he's communicated that he wishes to vacate his plea, that he felt pressured to accept the plea. Right, I understand that. I understand the after-the-fact account, but the kind of case that you're making is one that could be raised in many, many guilty plea cases, where the person has pled guilty, has given all the right answers, fails to seek to withdraw the guilty plea in the district court, and didn't even respond to the notice this court sent him when we sent him the record in the first appeal, right? Your honor, Mr. Flores has stated he never received the Anders brief that his appellate counsel filed, or his record. He still asked me to send him that record. Maybe he's telling you that, but what do we make of our docket in the prior appeal has a pro se motion filed by appellant Melisio Flores to withdraw the record on appeal. This is after the Anders brief. He would have had no reason to make that request if he had not actually received the Anders brief, and then our record indicates an order to the clerk to transmit the record to him, and so on. Your honor, according to Mr. Flores, he filed that motion because he still did not have the record, and he did not have the Anders brief, and that's what he has recorded. That's what he's told you. Yes, your honor. Okay. He did know an Anders brief was filed, though. He says he did not receive, he filed a notice with this court in order to get the record, because he did not know what was happening. He has represented both to the district court and to me and to this court in his new affidavit that his appellate counsel did not discuss the Anders brief with him or discuss his appeal at all, and that he communicated that he wanted to get his pleas vacated because they were not voluntary. How long has he extended the time? It was initially 13 months and three superseding indictments. He was charged with later. I mean, he's run this string out quite well, hasn't he? Your honor, he has filed his 2255, which he is entitled to, and 2255 is a safeguard for criminal defendants like Mr. Flores, who is claiming that his guilty plea is not voluntary. I guess my question probably you could give a simple answer. How long since the offense charge was committed? Mr. Flores was the first charging indictment was on October 19, 2011, your honor. Five years ago. Yes. The plea proceedings happened in 2011 as well, and 2012. He was sentenced in 2012. His appeal proceeded, and he did file this 2255 motion in 2013, so it has taken some time to get here, but his 2255 motion was not that long after. He got sentenced, what, 216 months? Yes. And if he is successful in getting his guilty plea vacated and goes to trial, I'm trying to do some ballpark calculations here, but he would lose, and he's convicted, he would lose the acceptance of responsibility discount. The guideline range for that would be 360 months to life, correct? Yes, your honor. And that's what he wants? He understands. He wants to take that risk. Yes, he understands that he was sentenced below the guidelines range, and he understands the risk. He has communicated to me that he wishes to proceed because his guilty plea was not voluntary and that he is innocent. Counsel, let me just ask you, obviously we have taken care to allow room for extraordinary cases where somebody can make a compelling case that a plea was not voluntary, despite appellate waivers and the collateral challenge waiver. Can you direct me to examples of cases where we have talked about that, not just theoretically, but where we have actually granted relief from those appellate waivers? Your honor, in the case. In essence, what does it take? The cases I have come across where this court has acknowledged that that possibility exists, but for the most part not granted relief because, and I'll tell you why this case is different to me and is troubling. In the vast majority of cases, petitioners come forward in the 2055 motion and they say my plea was not voluntary, full stop. And the court quite correctly says that's pretty conclusory. You have not given us enough here to do more, to look beyond what you said at your plea hearing and what you signed in that plea agreement. Mr. Flores has submitted pretty specific and troubling allegations that his attorney did not share discovery with him, did not discuss aspects of the plea agreement, told him to sign the agreement whether he wanted to or not, and told him how to answer questions at the plea hearing. Now, if all of those things are actually true, there's no question that his plea is not voluntary. And at a minimum, he's entitled to an evidentiary hearing given these new allegations notwithstanding. His testimony at such a hearing would have to consist of a series of recantations of what he told the judge during the colloquy, correct? Yes, Your Honor. And his explanation for that is that he was answering the questions as his attorney told him to do so. He obviously was not doing that because he was objecting to various aspects of the factual account, right? Raising questions and the judge gave the counsel time to explain some things to him, right? It is unclear to me from reading the record. He spoke with his attorney, by my count, five times off the record in response to him trying to answer very basic questions like, do you plead guilty? So he's saying during those conversations, Your Honor, I see that my time has expired. May I finish? No, you have time. You've got a minute. Oh, I'm sorry. He's saying at those conversations, he was telling me what to answer. I didn't fully understand what was going on. And every time he tried to voice factual objections, his attorney immediately interjected and said, actually, no, he really does want to plead guilty. So I think the transcript does leave some questions. So what was going on? And this case is different because of the very specific allegations he has made. Right, but if all of those specific allegations were indeed true, he had the opportunity to litigate the issue with new counsel when his counsel performed in the way that he alleges withdrew, and then also on direct appeal. We've got layers of procedural default here. Your Honor, the government has forfeited any procedural default argument, but even putting that aside, he said his appellate counsel misstated his wish, that he always wished to challenge it, and there's no procedural bar to the court hearing his 2255 motion. It does permit him to raise this issue now, notwithstanding his failure to do so before. So what do the United States give up in return for the waivers of appeal and 2255 challenges? Your Honor, he gave up his right to appeal and his right to challenge on collateral review, and he's not seeking to retain any benefits of the agreement. He's not seeking to have his charges dismissed. Well, he's trying to force a trial years later, which is usually much more difficult, right? Your Honor, at a minimum, he is entitled to an evidentiary hearing for a determination on whether his allegations are true, whether in light of the new allegations, you can view what happened at the plea hearing as a voluntary guilty plea. Thank you. Mr. Bukowski? Good morning, and may it please the Court. I'd like to begin by picking up the thread of procedural default, Your Honors. Counsel has stated that the United States has forfeited the issue. I would just respectfully urge the Court to, of course, the Court can affirm on any ground present in the record, and I think I agree with Judge Sykes, what she said earlier, that there are layers of procedural default. Those layers are evident, self-evident in the record, and this Court should consider them and should, in fact, treat this case as defaulted. To go back to the procedural safeguards mentioned earlier by Judge Hamilton, Rule 51B of this circuit is in place, I think, at least in part, to give someone like Mr. Flores notice that an Anders brief has been filed and that his appellate attorney is seeking to withdraw. And that's exactly what happened here. An Anders brief was filed in May of 2012, and about a day or two later, this Court, and the docket entry reflects this, this Court, the clerk of this Court sent out notice, according to 51B, with return receipt, and return receipt is indicated on the docket. Docket item 12, which is the letter Judge Hamilton mentioned earlier, sent by the appellant back to the Court regarding the record, that was sent on July 2, 2012. That was after the deadline this Court gave in its 51B notice of June 18, 2012. And the Court, again, issued a second order directing that the record be sent to the appellant, and the docket, I think, reflects it was sent and extended the response for the Anders brief until August 6, 2012. And then it was only several months later, October 19, 2012, that this Court issued its non-presidential order granting the motion to withdraw and dismissing the appeal. Not once in that several months, from May until October, did the appellant indicate any kind of response, any kind of objection to the representation contained in the Anders brief that Mr. Bratton consulted with Mr. Flores about withdrawal of his guilty plea. So I think the procedural regularity of abiding by this Court's procedure is evident from the record, and this Court should be confident that the representation that Mr. Bratton made as a member of the Bar, that he followed this Court's instruction to consult with his client, is true. And beyond that, I think the Court can be confident, just based on the way that this procedure worked, and it did work perfectly, the Court should be confident that in fact this is a procedural default situation and the matter should be over. But if the Court disagrees, I think implicit in the Court's... Were any of those procedural defaults raised by the government in the district court here? Not expressly, that is true, Your Honor. I went back, I looked at the response, I did not see anything there. But again, I think that just based on the fact that the matter was well briefed, fully briefed by both parties at this stage, and the Court can make that finding, of course, based on what's present in the record, and I think it's present here. And the third reason, Your Honor, is for procedural default to be bypassed here necessarily requires a finding that, based on the theory of the appellant, that Mr. Bratton committed ineffective assistance of counsel. And that argument itself focuses specifically on what is alleged to be a misstatement about whether or not Mr. Flores was consulted about withdrawing his guilty plea. In other words, a lie. I think the Court would basically have to find that there's a lie in the record from Mr. Bratton. And not only that, find that its own procedures, which appear on their face, according to the docket, to be very regular, very ordinary, and reliable, was ineffective in this circumstance. And I don't think the Court should go that far. But if the Court does find that there is no procedural default in this instance, I think that the record is very clear. It's conclusive that the guilty plea in this case was knowing and voluntary. Judge Lawrence spent a lot of time. The record, I think, makes this very clear. Going through in exhaustive detail through the plea colloquy, ensuring that Mr. Flores was aware of the nature of the charges he was facing, aware of the consequences of pleading guilty, aware of the consequences of abiding by this plea agreement. And at every stage, while he was under oath, at the key questions in this scripted colloquy, he answered yes, showing his understanding and showing that he was taking this step voluntarily. And on the topic of the plea agreement, Your Honor, I think that he did definitely get the benefit of the bargain. The Court asked questions about the sentencing range. And these plea agreements like this are fairly common in our district, where there may be a sacrifice on the part of the government as far as the top end of what sentence the prosecutor might want to argue for in exchange for waivers of appeals, waivers of 2255s. And I would say that in this case, Mr. Flores got the benefit of his bargain and now, only now, is showing buyer's remorse and wants to go back and is asking this Court to disregard everything he said, in essence, in response to the plea colloquy. I think the district judge was well within his right when the 2255 came around again to deny the 2255 on the basis of the finding that it was, in fact, a knowing and voluntary plea. And after all, who better to make that decision? Judge Lawrence is the one who conducted the colloquy. He was there. He was able to assess the demeanor of Mr. Flores in open court. I'm sure he was not a party or listened in on any of the conferences, of course, that Mr. Flores had with Mr. Edgar. But I'm sure the judge could assess how long those conferences took and by the body language of Mr. Flores if he was having a major problem here. And the record reflects that he asked the customary question about whether the defendant was satisfied with his counsel's performance. Yes, Your Honor. I agree. In addition to all of the other sorts of questions that are required under the Rule 11 colloquy to establish voluntary and knowing plea. So at the end of the day, Your Honor, I think that the waiver should be recognized and strictly enforced. But even if not, even if we get to, I guess, sort of the merits of the voluntariness if the court considers the record, the record as a whole conclusively shows that this was a voluntary and knowing plea and that the district court should be affirmed. Thank you, Mr. McCoskey. Thank you. Do you have anything else? I'll give you a minute to respond. If I may just briefly address procedural default, Your Honors. The government acknowledges that it both had an obligation and did not raise the issue below. The presence of procedural default does not deprive this court of jurisdiction, especially when the question of procedural default is inherently a factual one given the potential ineffective assistance. The court should not address that issue for the first time on appeal, especially when it is very clear that the government forfeited that argument.  Thank you, Counsel.